**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| JULIE VOEKS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>  vs.<br><br>FINANCIAL RECOVERY SERVICES INC.,<br><br>        Defendant. | Case No.: 18-cv-1781<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Financial Recovery Services, Inc. ("FRS") is a foreign business corporation with its principal offices located at 4510 West 77th Street, Suite 200, Edina, Minnesota 55435.

7. FRS does substantial business in Wisconsin and has a registered agent for the purposes of service of process located at C T Corporation System, 301 South Bedford Street, Suite 1, Madison, Wisconsin 53703.

8. FRS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. FRS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. FRS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

11. FRS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

12. On or about September 5, 2018, FRS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "TD BANK USA, N.A." ("TD Bank"). A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

2

15. Upon information and belief, <u>Exhibit A</u> was the first written communication FRS mailed to Plaintiff regarding the alleged debt referenced in <u>Exhibit A</u>.

16. <u>Exhibit A</u> contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires the debt collector send the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any other portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit A</u>.

17. The reverse side of <u>Exhibit A</u> also contains the following:

> Federal Law prohibits certain methods of debt collection, and requires that we treat you fairly. You can stop us from contacting you by writing a letter to us that tells us to stop contact or that you refuse to pay the debt. Sending such a letter does not make the debt go away if you owe it. Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action.

<u>Exhibit A</u>.

18. This language appears to inform the consumer of her right to require debt collectors to cease communication. *See* 15 U.S.C. § 1692c(c).

19. The statement that "we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action," is false, deceptive, and misleading to the unsophisticated consumer.

20. Under the FDCPA, 15 U.S.C. § 1692c(c)(1)-(3), after the consumer notifies the debt collector in writing that she refuses to pay the debt or wishes the debt collector to cease further communication with the consumer, the debt collector may contact the consumer for three reasons:

> (c) Ceasing communication. If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>
> > (1) to advise the consumer that the debt collector's further efforts are being terminated;

3

> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>
> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).

21. <u>Exhibit A</u> is false, deceptive, and misleading about the consumer's rights under the FDCPA and the circumstances under which a debt collector may contact a consumer that has notified the debt collector in writing that informs the debt collector that she refuses to pay the debt or wishes for the debt collector to cease communication.

22. <u>Exhibit A</u> states that, if the consumer notifies the debt collector in writing, the debt collector "may not contact you again, except to let you know that there won't be any more contact or **that we intend** to take a specific action." (emphasis added).

23. <u>Exhibit A</u> fails to disclose that the debt collector may contact the consumer to notify the consumer about an action intended to be taken by the creditor. *Compare* <u>Exhibit A</u> ("that we intend to take a specific action") *with* 15 U.S.C. § 1692c(c)(3) ("that the debt collector **or creditor** intends to invoke a specified remedy.") (emphasis added); *see, e.g., Scheffler v. Messerli & Kramer, P.A.*, 791 F.3d 847, 848 (8th Cir. 2015) ("That is exactly what the garnishment letter was---a notification that [the creditor] would be attempting to collect the debt Scheffler owed.").

24. <u>Exhibit A</u> also fails to disclose that the debt collector may contact the consumer "to notify [her] that the debt collector or creditor **may** invoke specified remedies which are ordinarily invoked . . . ." *Compare* 15 U.S.C. § 1692c(c)(2) (emphasis added) *with* 15 U.S.C. § 1692c(c)(3) (to notify the consumer that the debt collector or creditor ***intends* to** invoke a specified remedy.") (emphasis added).

4

25. The failure to disclose that the debt collector may contact the consumer to notify her that the debt collector or creditor may invoke a remedy even if the debt collector does not currently intend to invoke that remedy with respect to the debt in question is a material misrepresentation. *See,* 15 U.S.C. § 1692e(5).

26. If a consumer has demanded, in writing, that the debt collector cease communication, the consumer would be under the impression that the debt collector would not contact her unless either the debt collector or the creditor actually *intended* to invoke the remedy stated. *E.g., Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 399 (6th Cir. 1998) (debt collection letter making a "noncoercive settlement offer[]" fell under § 1692c(c)(2) exception because "the statute does not require that a debt collector invoke any specific type of remedy . . . it allows the debt collector to notify the consumer of remedies it normally invokes."); *see also, Flores v. Collection Consultants of Cal.*, 2015 U.S. Dist. LEXIS 92732, at *18 (C.D. Cal. Mar. 20, 2015) ("one, non-threatening letter, containing specific terms of an offer for settlement does not contravene the purposes of the FDCPA, and falls under the § 1692c(c)(2) exception.").

27. There is a difference between the debt collector or creditor *intending to invoke* a specific action and the debt collector or creditor *ordinarily invoking* that remedy. *See*, 15 U.S.C. § 1692e(5).

28. If a consumer asked FRS to cease communication, FRS could warn the consumer that FRS or the creditor "ordinarily invoked" a certain remedy even if they had no intention to do so with respect to the debt in question.

29. For example, FRS could advise the consumer that the creditor "ordinarily" sues consumers and attaches their assets through garnishment even though the consumer was not a

5

Case 2:18-cv-01781-JPS   Filed 11/09/18   Page 5 of 12   Document 1

candidate for legal action because she had no income that could be attached through garnishment.

30. Although the FDCPA does not affirmatively require debt collectors to notify alleged debtors of their rights under 15 U.S.C. § 1692c, if a debt collector chooses to do so, it cannot confuse or mislead debtors as to the scope of these rights. *E.g., Brzezinski v. Vital Recovery Servs.*, 2006 U.S. Dist. LEXIS 51263, at *15-16 (E.D. Wis. July 12, 2006) (denying defendant's motion for summary judgment because, "to the extent that section (I) of the debt collection letter is an attempt to set forth the matters found in § 1692c(a)(1) and (3), it falls short.")

31. Plaintiff was misled, deceived, and confused by Exhibit A.

32. The unsophisticated consumer would be misled, deceived, and confused by Exhibit A.

33. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

34. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); *quoting Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt

collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries.");*Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist

7

without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

35. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

36. 15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

### *The WCA*

38. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

39. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

40. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

41. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

42. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

43. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

44. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

45. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

46. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

47. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

48. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

49. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

50. The statement in <u>Exhibit A</u> that "Once we receive your letter, we may not contact you again, except to let you know that there won't be any more contact or that we intend to take a specific action," is false, deceptive, misleading, and confusing to the unsophisticated consumer. The plain language of the FDCPA allows the debt collector to contact the alleged debtor to inform her about actions that the creditor intends to take, and to inform her about specified remedies that the creditor intends to invoke. *See* 15 U.S.C. § 1692c(c).

10

51. Defendant violated 15 U.S.C. §§ 1692c(c), 1692e, and 1692e(10).

## COUNT II – WCA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. Defendant is a licensed Collection Agency.

54. Exhibit A misinforms the unsophisticated consumer as to her rights.

55. Defendant's conduct violates the FDCPA. Wis. Admin. Code § DFI-Bkg 74.16.

56. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

57. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) where the letter was mailed between November 9, 2017 and November 9, 2018, inclusive, (f) and was not returned by the postal service.

58. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

59. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

60. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

11

Case 2:18-cv-01781-JPS   Filed 11/09/18   Page 11 of 12   Document 1

61. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

62. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

63. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 9, 2018

        **ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com